The indictment in the case is as follows:
“The grand jury of the city and county of New York, by this indictment, accuses Charles A. Buddensieck, Charles Franck, Thomas W. Dailey, whose real Christian name is to the grand jury aforesaid unknown, and Robert V. Mackey, of the crime of manslaughter, committed as follows:
“Heretofore and prior to the thirteenth day of April, in the year of our Lord 1885, the said Charles A. Buddensieck and Charles Franck each late of the city and county of New York, aforesaid, did erect and construct and cause and procure to be erected and constructed, and did act and assist and were concerned in the erection and construction of a certain building within the said city and county, the same being designed and intended to be used and occupied upon its completion by human beings for dwelling purposes, they, the said Charles A. Buddensieck and Charles Franck, at the time of the erecting and constructing of the said building having the entire care, charge and control and supervision of the same. And the said Charles A. Buddensieck and Charles Franck, so having the entire care, charge, control and supervision of the constructing and erecting of the said building, it thereupon became and was their duty, at the time of such erection and construction and until the said building should be completed, to cause the walls thereof to be properly bonded and solidly put together, and to be built to a fine, and be carried up plumb and straight with close joints; and to cause all joints in the said walls to be well filled with mortar of good quality, and to cause mortar of good quality to be used in the construction of the said walls, in order that the same should be properly and solidly put together; and to cause bricks, stones, iron work, planks, timbers, beams, boards and materials of good quality and of sufficient strength, to be used in the construction of the said building; and to prevent from being used in such construction any bricks, stones, iron work, planks, timbers, beams, boards or other materials which were not of good quality and of sufficient strength; and to use and.exercise every care and precaution in their power to render the said building and every part thereof safe and secure, as well *666 during its construction as upon the completion of the same.
“'And the said Charles A. Buddensieck and Charles Franck, well knowing the premises, but being wholly unmindful and neglectful of their duty in that behalf, at the time of the erection and construction of the said building, and on divers days and times up to the said thirteenth day óf April, in the year aforesaid, at the city and county aforesaid, did feloniously and willfully neglect and omit to cause the walls of the said building to be properly bonded and solidly put together, and to be built to a line and-carried up plumb and straight with close joints; and did then and there willfully and feloniously neglect and omit to cause the joints in the said walls to be well filled with mortar of good quality—and did then and there willfully and feloniously neglect and omit to cause proper mortar to be used in the construction of the said walls; and did then and there willfully and feloniously neglect and omit, to cause bricks, stones, iron work, planks, timbers, beams, boards and materials of good quality and of sufficient strength to be used in the construction of the said building; and did then and there willfully and feloniously neglect and omit to prevent from being used in such construction divers bricks, stones, iron work, planks, timbers, beams, boards and other materials which were not of good quality nor of sufficient strength, and did then and there willfully and feloniously neglect and omit to use and exercise every care and precaution in their power to render the said building and every part thereof safe and secure during its construction and upon the completion thereof; and the said Charles A. Buddensieck and Charles Franck, on the days and times aforesaid, at the city and county aforesaid, did then and there willfully and feloniously cause, suffer and permit the walls of the said building tobe improperly bonded, and loosely and flimsily put together; and did then and there willfully arid feloniously cause, suffer and permit mortar of a grossly poor and inferior quality, and mortar chiefly composed of loam to be used in the construction of the said walls; and did then and there willfully and feloniously cause, suffer and permit divers bricks, stones, planks, beams, timbers, iron work and other materials of poor quality and insufficient strength to be used in the construction of the said building.
“In consequence of which said most culpable negligence, acts and omissions on the part of them, the said Charles A. Buddensieck and Charles Franck, the said building after-wards, to wit: on the said thirteenth day of April, in the year aforesaid, did fall to the ground there. And the said Charles A. Buddensieck and Charles Franck, by the falling *667 of the said building in the manner aforesaid, on the day and in the year aforesaid, at the city and county aforesaid, with force and arms, in and upon the body of one Louis Walters, in the peace of the people of the state of New York, then and there being in the said building before and at the time of the falling of the same, willfully and feloniously did make an assault on him," the said Louis Walters, down upon and against the bricks, stones, planks, timbers, beams, iron works and other component parts of the said building did then and there, with great force and violence, willfully and feloniously cast and throw, thereby giving unto him, the said Louis Walters, then and there, in and upon the head, neck, breast, belly, back, sides and other parts of the body of him, the said Louis Walters, divers mortal bruises and contusions, of which said mortal bruises and contusions he, the said Louis Walters, from the said thirteenth day of April, in the year aforesaid, until the fourteenth day of April in the same year aforesaid, at the city and county aforesaid, did languish, and languishing did live, on which said fourteenth day of April, in the year aforesaid, the said Louis Walters, at the city and county aforesaid, of the said mortal bruises and contusions, died.
“And the said Thomas W. Dailey and Robert V. Mackey,' each late of the city and county aforesaid, at the time of the committing of the felony and manslaughter aforesaid, in manner and form aforesaid, at the city and county aforesaid, were then and there willfully and feloniously concerned in the commission of the same, and did then and there willfully and feloniously aid and abet in the commission of the said felony and manslaughter.
“And so' the grand jury aforesaid do say that the said Charles A. Buddensieck, Charles Franck, Thomas W. Dailey and Robert V Mackey, him, the said Louis Walters, in manner and form aforesaid, and by the means aforesaid, willfully and feloniously did kill and slay; against the form of the statute in such case made and provided, and against the peace of the people of the state of New York and their dignity.”
Danforth, J. The appellant draws in question, first, the sufficiency of the indictment; second, the competency of jurors; third, the rulings of the learned recorder upon questions of evidence; fourth, his charge and 'his refusals to charge as requested by the prisoner’s counsel, and he does so upon propositions which appear to have been presented to the learned judges at general term, and by them so fully considered and answered as to make it apparent that a different result would have been little better than a miscarriage of justice.
*668 The indictment is under title 9, chapter 2, section 193, subdivision 3, and section 195 of the Penal Code, and in substance charges that the prisoner, by certain culpable negligence, acts and omissions in the selection and use of materials for and in the construction of a certain building which he was erecting in the city and county of New York, and which acts are specified, killed and occasioned the death of one Walters. One crime only is.alleged, manslaughter in the second degree. Both sections of the Code above referred to, define a number of unlawful acts, including those set out in the indictment, as constituting that crime. The case comes within those sections, and the form of the indictment is in substantial, if not literal, compliance with the provisions of section 284 of the Code of Criminal Procedure. Neither time, place nor circumstance was omitted. The time was stated to be the thirteenth of April, and days prior thereto during the erection of the buildings, the place within the jurisdiction of the court, and the circumstances those enumerated in the statute as constituting the offense. We discover no imperfection, therefore, in it, either in form or substance, and those alleged against it by the appellant, if not wholly unfounded, do in no respect tend to his prejudice, so far as substantial rights upon the merits are concerned, and hence they cannot affect either the indictment or judgment. " Code of Criminal Procedure, § 285. It follow's that the trial court did not err in denying the defendant’s motion in arrest of judgment. Upon such a motion only two objections are available: First, to the jurisdiction of the court over the subject of the indictment; second, that the facts stated do not constitute a crime. Code of Criminal Procedure, §§ 467, 331. The first was not presented to the trial court, nor are either now relied upon. The other objections are unimportant on such a motion.
It is next argued that the trial court erred in overruling the challenges to three jurors: First, John Bloom, on examination by the district attorney, testified that he knew of no reason why, if sworn upon the jury, he could not render an impartial verdict upon the evidence, and in answer to the prisoner’s counsel he said that he had read in the newspapers about the occurrence in question, but had formed no opinion as to the guilt or innocence of the prisoner; that his mind was free from any impression in regard thereto, or the charge contained in the indictment, but was of the opinion from what he had read that the catastrophe was the result of culpable negligence on the part of some one, and that it would require evidence to remove the impression; second, the condition of Meyers’ mind was disclosed in substantially the same way, while, third, Weil said that from reading the papers he had formed an opinion *669 as to the guilt or innocence of the defendant which would require evidence to remove. The challenge was upon the ground of actual bias existing in the minds of those proposed jurors, but he also testified ‘ in substance that he could, nevertheless, go into the jury box and render an impartial verdict upon the evidence submitted from the witness stand, without being influenced by the opinion or impression derived or formed from what he had read. There remained, therefore, no sufficient ground of challenge, or reason why the trial court, could not, in the exercise of a sound discretion, determine that these several persons could try the issue impartially, and without prejudice to the substantial rights of the party challenging. They were therefore competent, within the letter of the Code of Criminal Procedure relating to such' questions, and the defendant’s objections were properly overruled. People v. Otto, 101 N. Y., 690; People v. Crowley, 102 id., 234; People v. Carpenter, 102 id., 238.
There are many exceptions to evidence. The first noticed by the appellant relates to the admission in evidence of a piece of brick and mortar produced by the witness D’Oerich. He was inspector of buildings for the fire department, and testified as to the condition of the fallen wall, its want of solidity, the materials of which it had been constructed; and, among other things, produced in evidence specimens of the mortar taken from the buildings, some of it from between two bricks, part of the fallen walls. The case of the people turned, in part, upon the inferior quality of the materials; and anything to show how they, in fact, differed in their characteristics from good, sufficient and suitable substances, in general and approved use for like purposes, was competent. That the mortar in fact used by the defendant in the construction of the walls was of “a poor and inferior quality, and chiefly composed of loam,” was a distinct and important allegation. That it is the admixture of clear grit—sharp sand—with lime which gives it the character of cement, was proven; that the last is binding, while the other is not. That bricks laid with mortar of lime and sand will resist the influence of the rain, while a composition of lime and loam will be washed out, was established, so far as it could be, by opinion, and the result of observation and experience. The testimony came from one qualified to speak upon that subject; but the conditions illustrated by the various specimens of mortar, and mortar and bricks, taken from the ruins, and the specimen from another building, were some evidence of the truth of his assertion, and they could properly be received, not only as confirming his opinion, but to enable the jurors the better to understand and appreciate the difference in effect be *670 tween the mortar used by the defendant and that properly prepared. That one was strong and solid, the brick firmly imbedded in the mortar, and the other disjointed, and with no coherence, was some evidence that the differences pointed out were substantial. The evidence as to the quality and component parts of the mortar used by the. defendant was indispensable as part of the accusation, and the evidence as to the proper ingredients of mortar used by others, and in other buildings, and its quality and effect, was not less competent as tending to show the cause of the falling of the walls. The defendant’s mortar the expert pronounced bad; the other, good. The object of using the mortar was the same in both cases. The specimens tended to prove the truth of his assertion. Indeed, the argument of the appellant rather goes to the weight of the evidence than its admissibility.
The learned counsel states that, if the witnesses had explained and pointed out the difference between the two specimens—the reason why one was good and the other-bad—“the specimens might have been shown to the jury as illustrating the testimony of the witnesses.” If there was any lack of such testimony—and it seems to us there was not—it would only show that further use might have-been made of the pieces of brick and mortar, but would in nowise support the general objection that their exhibition to the jury was “incompetent or inadmissible for any purpose.” The cases cited by the appellant upon this branch of the case have been examined, but we find none in point..
During the cross-examination of this witness (D’Oerich), at the request of defendant’s counsel, he stated that he-superintended the general work of the office of inspectors, of buildings, and that official examiners were his subordinates, and their duty to make reports, among other things, of the condition of buildings, the violation of building laws, and unsafe buildings, and also, if improper materials were-used in construction, to notify him; that they did report the buildings in question as unsafe. He was then asked by-defendant’s counsel, “What are those reports you have in your hands?” and answered, “Unsafe reports,” “in reference to those buildings.” They bore date January, 1885,. and were read in evidence as defendant’s exhibit No. 1. Five other reports relating to buildings adjoining that mentioned in exhibit No. 1 were, upon like requests, received in evidence, and.marked defendant’s exhibits Nos. 2. 3, 4, 5, and 6, showing the buildings at the tiipe of the reports to-be unsafe. Upon re-direct examination, the district attorney offered in evidence certain other reports made subsequently, and in successive weeks up to the thirteenth of" April, concerning the same buildings, and their safety. The- *671 defendant’s counsel said: “Before they are put in evidence, I have a right to examine this witness upon them;” and, doing so, he showed that the reports exhibited the condition of the buildings on the day the reports were made, whether they had remained unsafe, or had been changed; and, calling attention to one, he said, “ What do the words ‘nothing-done,’ on that report, mean;” and received for answer “That nothing has been done,—that the order of the department has not been complied with.” He also showed that there was no record of any unsafety save that reported in January. The general contents of these reports, and a condition of the buildings substantially as therein stated, was also disclosed by paroi evidence) coming either upon examination by defendant’s counsel or upon examination by the district attorney in answer or explanation of that so obtained. It is manifest, therefore, that their admission could in no respect tend to the defendant’s prejudice; and while it is important, in all cases, that evidence should be free from exception, a new trial ought not to be granted, even where one is well taken, unless the jury could draw, from evidence admitted under it, some unfavorable influence (Code Grim. Proc., § 542), nor when the party excepting has, by his own course of examination, destroyed the force of his objection. Both rules apply here.
The next exception brought to our attention is the use in evidence of a photograph of the premises. It was taken during the trial, but it appeared that ■ the part represented was in the same condition as when first seen by the witness, on the twenty-fifth of April, or soon after the structure fell. No objection was made that the person taking the picture was not competent or skilled in his art, nor that the then condition of the ruins was unimportant as throwing light upon the manner of the construction of the buildings. It exhibited the surface condition and state of the walla, and no doubt carried to the minds of the jurors a better image of the subject-matter concerning which negligence was charged than any oral description by eye-witnesses could have done. Its accuracy as a faithful representation of the actual scene was proven, and, in such a case, it must be deemed established that photographic scenes are admissible in evidence as appropriate aids to a jury in applying the evidence, vhether it relates to persons, things, or places. Cozzens v. Higgins, 1 Abb. Dec., 451; Cowley v. People, 83 N. Y., 464; Durst v. Masters, L. R. 1 Prob. Piv., 373, 378. No doubt the court) might, in its discretion, have allowed the jury to visit and view the premises, as it was asked to do by the prisoner’s counsel; but it was not bound to do so. Code Crim. Proc., § 411.
There are many other propositions submitted by the ap *672 pellant in relation to rulings upon evidence. They are less important than the foregoing. They seem, indeed, in view of the general course of the trial, and the conclusive character of the testimony unobjected to, and which justified the conviction, to have no merit, even if the exceptions upon which they are submitted were technically, well taken. We do not think they were, nor do they seem to involve any question which requires discussion.
The next point brings before us several allegations of error in the instructions under which the evidence was given to the jury. The record does not show that any exception to the charge was in fact taken, and there is, therefore, no question for Us to review. We find m the printed brief of the appellant a statement that a stipulation was made by counsel to the effect “that a general exception should give the defendant the benefit of a particular exception to any part of the charge.” This will not avail Briggs v. Waldron, 83 N. Y , 582. An exception is not alone for the benefit of the litigant, but is required for the sake of justice and fair dealing, and in order among other things that the attention of the trial judge being called to the supposed error, he may, if he thinks proper, correct it before the jury are called upon to consider their verdict. There were, however, numerous requests to charge, some were refused, and the exceptions to the refusal are now said to have been “well taken.” No argument is presented in support of that assertion, and our own examination discloses no error. The learned recorder so conducted the trial as to give the defendant the benefit of every doubt, his instruction's to the jury were confined to the testimony, and their attention directed to the very right of the case as it might appear to them upon the evidence. His rulings have been approved by the general term after a most deliberate and minute examination of the law and the facts, and that the case has been in both courts well and properly decided we find no reason to doubt. The result necessarily follows that the judgment appealed from should be affirmed.
Judgment affirmed.
All concur.